UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

─────────────────────────────────────────

WILLIAM C. DEHNERT,

                     Plaintiff,

          V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                     Defendant.

─────────────────────────────────────────

**REPORT AND
RECOMMENDATION**

07-CV-897
(GLS/VEB)

## I. INTRODUCTION

In June of 2005, Plaintiff William C. Dehnert filed an application for Supplemental Security Income ("SSI") benefits under the Social Security Act.  Plaintiff alleges that he has been unable to work since July 1, 2002, primarily due to knee pain and major depressive disorder.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through his attorney, Ira Mendleson, III, Esq., commenced this action on August 30, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1).  Plaintiff seeks judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 20, 2009, the Honorable Norman A. Mordue, Chief United States District Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 10).

For the reasons set forth below, this Court finds no reversible error and concludes

that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows.  Plaintiff applied for SSI on June 21, 2005, alleging that he had been unable to work since July 1, 2002. (T[1] at 38-41).  The application was denied on August 26, 2005. (T at 13, 34-37).  Plaintiff filed a request for a hearing on September 26, 2005. (T at 31-32).  On November 27, 2006, a hearing was held in Albany, New York before Administrative Law Judge ("ALJ") Robin Arzt. (T at 224).   Plaintiff, represented by counsel, appeared and testified.  (T at 224-227).

On February 20, 2007, ALJ Arzt issued a written decision denying Plaintiff's application for benefits.  (T at 13-20).  The ALJ's decision became the Commissioner's final decision on July 18, 2007, when the Social Security Administration's Appeals Council denied Plaintiff's request for review.  (T at 4-6).

Plaintiff commenced this action on August 30, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on December 28, 2007. (Docket No.7).  The Commissioner filed a Brief in opposition on February 1, 2008. (Docket No. 8).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.5)

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

## III. DISCUSSION

### A.    Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that

which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process[3] to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity

---

[3]First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.

If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

of this analysis in <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. <u>See</u> <u>Bowen</u>, 482 U.S. at 146 n. 5; <u>Ferraris v. Heckler</u>, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. <u>See</u> 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); <u>Heckler v. Campbell</u>, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.   Analysis**

**1.   Commissioner's Decision**

The ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 21, 2005.  (T at 15).  The ALJ found that Plaintiff has the "severe" impairment of recurrent major depressive disorder.  (T at 15).  However, the ALJ concluded that Plaintiff's mental impairment did not meet or equal the level of severity of any disabling condition set forth in Appendix 1 of the applicable Social Security Act Regulations (the "Regulations").  (T at 15).  The medical records indicated that Plaintiff had suffered a sprain in medial collateral ligament of his left knee, but that it had been fully resolved by December 2005.  (T at 17).  The ALJ concluded that there was no medical basis in the record for Plaintiff's complaints of ongoing knee pain.  Plaintiff does not challenge this conclusion.

After reviewing the medical evidence, the ALJ concluded that Plaintiff had the residual functional capacity to "perform unskilled work at all exertional levels." (T at 15). The ALJ concluded that Plaintiff is unable to perform his past relevant work as an electrician because it is "too mentally demanding." (T at 19). The ALJ gave Plaintiff "advanced age" status because he is over 55. (T at 19). The ALJ found that, given Plaintiff's residual functional capacity, past work experience, age, and educational background (high school education), he can perform jobs that exist in significant numbers in the national economy. (T at 19). Therefore, the ALJ determined that Plaintiff was not under a "disability," as defined under the Act. (T at 20).

As noted above, the ALJ's decision became the Commissioner's final decision on July 18, 2007, when the Appeals Council denied Plaintiff's request for review. (T at 4-6).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed. Plaintiff offers five (5) principal arguments in support of his position. First, he contends that the ALJ erred by failing to consider medical evidence relating to the period prior to June 2005. Second, he argues that there is no substantial evidence to support the ALJ's finding that Plaintiff retains the residual functional capacity to perform alternative work. Third, Plaintiff argues that the ALJ did not give sufficient weight to the opinions of his treating physicians. Fourth, Plaintiff contends that the ALJ failed to properly assess his subjective testimony regarding pain and disabling symptoms. Fifth and finally, Plaintiff argues that the ALJ erred by failing to consult a vocational expert. This Court will address each argument in turn.

### a.      Consideration of Evidence from Period Prior to June 2005

When deciding whether a claimant is disabled, the ALJ has a duty to develop the

record.  Pursuant to the applicable regulations, the ALJ must, before making a determination that a claimant is not disabled, develop the claimant's "complete medical history for at least the 12 months preceding" the month in which the claimant filed the application for benefits. 20 C.F.R. § 416.912(d); see also DeChirico v. Callahan, 134 F.3d 1177, 1184 (2d Cir.1998).  The ALJ is required to "gather such information for a longer period if there [is] reason to believe that the information [is] necessary to reach a decision." DeChirico, 134 F.3d at 1184 (citing 42 U.S.C. § 423(d)(5)(B) as incorporated by 42 U.S.C. § 1382c(a)(3)(G) and 20 C.F.R. § 416.912(d)).

However, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,' the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim." Rosa v. Callahan, 168 F.3d 72, 79 n. 5 (citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)).

In this case, the ALJ concluded that Plaintiff's psychiatric clinical records from 2003 to early 2005 were "not relevant because they are regarding the claimant's mental status before the application filing date." (T at 18).  Plaintiff argues that this finding was contrary to § 416.912 (d).  Plaintiff contends that the ALJ should have considered the records from 2003 to early 2005 because the evidence from that period established that he is disabled under the Act.

This Court finds Plaintiff's argument unavailing.  Section 416.912 (2) required the ALJ to develop a complete medical history dating back at least to June 21, 2004, one year prior to the application for benefits.  That medical history was, in fact, developed.  To wit, the administrative record contains numerous clinical records from 2003 and 2004. (T at 79-130).  Plaintiff does not allege or offer any documents from that period that were not

included in the medical history developed by the ALJ.  Section 416.912 (d) refers to the ALJ's obligation to obtain information necessary to compile a complete medical history; it does not require the ALJ to find all of the information in that medical history relevant to the disability determination.  Accordingly, the Court finds that the ALJ adequately developed the medical record pursuant to § 416.912 (d).

This Court does find that the ALJ's categorical declaration that the records from 2003 to early 2005 were "irrelevant" was perhaps inartful.  Because SSI benefits can only be granted prospectively, the only issue before the ALJ was whether Plaintiff was disabled under the Act as of June 21, 2005, the date of his application.  See Baladi v. Banhart, 33 Fed. Appx. 562, 564, 2002 WL 507139, at *1(2d Cir. 2002)(unpublished disposition); Gabaldon v. Barnhart, 399 F.Supp.2d 1240, 1250 (D.N.M. 2005); Wakefield v. Barnhart, 147 Fed. Appx. 282, 284, 2005 WL 2140991, at* 1 (3d Cir. 2005)(unpublished disposition).

The ALJ concluded that the medical records at and around the time of the application established that Plaintiff was not disabled as of that date.  As such, the "archival" treatments were thus, in any sense, irrelevant.  Presumably, the ALJ did not intend to suggest that evidence of a claimant's mental state prior to the date of the SSI application is per se irrelevant in every case.  Indeed, one's mental illness does not start and end precipitously.  Thus, evidence of prior mental illness is some evidence, at least circumstantial, that the mental illness had an element of continuity past the date of application.  The language used by the ALJ might give one the impression that he was unaware of this fact and the language was, to that extent, clumsy.  In any event, the ALJ's ultimate conclusion that Plaintiff was not disabled as of the date of his application was supported by substantial evidence and should be upheld for the reasons discussed below.

### b.    Residual Functional Capacity Determination

Residual functional capacity ("RFC") is defined as: "what an individual can still do despite his or her limitations." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir.1999). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

When making a residual functional capacity determination, the ALJ considers a claimant's physical abilities, mental abilities, symptomatology, including pain and other limitations that could interfere with work activities on a regular and continuing basis. 20 C.F.R. § 404.1545(a).

In this case, the ALJ found that Plaintiff's recurrent major depressive disorder was a severe impairment (T at 15) and that Plaintiff could not perform his past relevant work as an electrician. (T a 19). However, the ALJ determined that Plaintiff retained the RFC to perform unskilled work at all exertional levels. (T at 15). Plaintiff challenges this finding, arguing that the ALJ did not provide an adequate explanation in support of his RFC determination.

When evaluating the severity of mental impairments, the Regulations require application of a "special technique" at the second and third steps of the framework, in addition to the sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) ( citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of claimant's functional limitation resulting from the

impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1).

The claimant bears the burden of establishing that his or her impairments are set forth in the Listing of Impairments or are equal in severity to a Listing. See Naegele v. Barnhart, 433 F. Supp.2d 319, 324 (W.D.N.Y. 2006) ("It must be remembered that plaintiff has the burden of proof at step 3 that she meets the Listing requirements.").

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925(a). If a claimant's impairment or combination of impairments meets or equals a listed impairment, the evaluation process is concluded and the claimant is considered disabled without considering the claimant's age, education, or work experience. 20 C.F.R. § 416.920(a)(4)(iii).

To show that an impairment matches a Listing, the claimant must show that his or her impairments meet all of the specified criteria. Sullivan v. Zebley, 493 U.S. 521, 530 (1990); 20 C.F.R. § 416.925(d). If a claimant's impairment "manifests only some of those criteria, no matter how severely," the impairment does not qualify. Sullivan v. Zebley, 493 U.S. at 530. To satisfy this burden the claimant must offer medical findings equal in severity to all requirements, which findings must be supported by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. § 416.926(b). Abnormal physical findings "must be shown to persist on repeated examinations despite therapy." 20 C.F.R. Pt. 404, Subpt.

P, App. 1 § 1.00(B). Further, the medical reports must indicate physical limitations based upon actual observations and/or clinical tests, rather than the claimant's subjective complaints. *Id.*

In this case, the ALJ correctly summarized (T at 16) and applied (T at 17-19) the special technique and substantial evidence supports the ALJ's ultimate determination.   At the first step, the ALJ concluded that Plaintiff did have a medically determinable impairment – recurrent major depressive disorder.

Plaintiff appears to suggest that the ALJ should have concluded that Plaintiff's impairments meet or are equivalent to  § 12.04 of the Listings (Affective Disorders). To establish that his impairments meet or equal § 12.04, Plaintiff must first satisfy one of the threshold criteria set forth in Subsection (A) of the impairment descriptions.  This typically involves proof of a medically determined mental impairment, combined with evidence of some definite limitation caused by that impairment.

If Plaintiff falls within the threshold parameters of Subsection (A), the inquiry turns to Subsection (B) of § 12.04 to determine whether her "mental impairments result in at least two of the following: (1) marked restrictions in activities of daily living; (2) marked restrictions in social functioning; (3) marked restrictions in maintaining concentration, persistence, or pace; (4) repeated episodes of decompensation, each of extended duration." Paratore v. Comm'r of Social Security Admin., No. 05-CV-1356, 2008 WL 541156, at *5 (N.D.N.Y. Feb. 25, 2008).

Plaintiff clearly satisfies the Subsection (A) criteria under § 12.04 because the clinical records document depressive symptoms with sleep disturbance, difficulty concentrating, feelings of worthlessness, and decreased energy.  Thus, the key inquiry is

the effect Plaintiff's impairments have with regard to the Subsection (B) criteria. Plaintiff will only be disabled if his impairments are so marked in at least two of the specified areas that they preclude him from performing basic work activities.  See Armstrong v. Comm 'r of Social Sec., No. 05-CV-1285, 2008 WL 2224943, at * 12 (N.D.N.Y. May 27, 2008) (holding that even if the ALJ had determined that the plaintiff's depression was a medically determinable impairment, substantial evidence must exist to support a conclusion that the condition was severe and precluded the plaintiff from doing basic work activities).

Regarding his activities of daily living, Plaintiff testified that he reads, watches television, takes occasional walks, and visits friends and family.  (T at 243).  Dr. Naveen Achar, Plaintiff's treating psychiatrist, opined that Plaintiff had no limitations with regard to maintaining basic standards of personal hygiene and grooming. (T at 87)

Although the record contains indications from 2003 and 2004 that Plaintiff suffered from periodic panic attacks and difficulty sleeping during that period (T at 106, 113), the same records indicated that Plaintiff's "daily functions" were "fairly good" and that, aside from his mood, Plaintiff's mental status was "within normal limits." (T at 107, 118).  Dr. Kerry Brand, Ph.D, conducted a consultative psychiatric evaluation on August 9, 2005.  Dr. Brand indicated that Plaintiff was able to dress, bathe, groom, and cook simple meals.  (T at 150).  In a non-examining mental RFC assessment conducted by two State Agency review professionals in August 2005, Plaintiff was noted to have only slight limitations with regard to his activities of daily living.  (T at 167).  In sum, there is no indication that Plaintiff suffered from anything more than a mild limitation with regard to his activities of daily living.

"Social functioning refers to an individual's capacity to interact appropriately and communicate effectively with other individuals." Bergman v. Sullivan, CIV 88-513L, 1989

12

WL 280264, at * 4 (W.D.N.Y. Aug. 7, 1989).  Dr. Achar opined that, while Plaintiff was moderately limited in terms of his ability to interact appropriately with others, he had no limitations with regard to maintaining socially appropriate behavior without exhibiting behavior extremes. (T at 87).   Plaintiff testified that he visits with family and friends.  (T a 243).

The August 2005 State Agency RFC assessment indicated that Plaintiff had only "slight difficulties maintaining social functioning." (T at 167).  In particular, while Plaintiff was noted to have moderate limitations in terms of interacting appropriately with the general public and maintaining socially appropriate behavior, he was found to have no limitations with respect to his ability to get along with co-workers or peers without distracting them or exhibiting behavior extremes. (T at 154).  Thus, the ALJ's conclusion that Plaintiff only had "mild" limitations with regard to social functioning (T at 19) was supported by substantial evidence.  Plaintiff points to no evidence that would even arguably support a finding that he suffers from a marked limitation in terms of social functioning.

With respect to Plaintiff's ability to maintain concentration, persistence, or pace, the ALJ found that Plaintiff had only "moderate" limitations.  (T at 19).  This determination was likewise supported by substantial evidence.  Dr. Achar concluded that Plaintiff was "moderately limited" in terms of his ability to carry out instructions, maintain attention and concentration, and function in a work setting at a consistent pace. (T at 87).  Dr. Achar determined that Plaintiff had no limitations with respect to understanding and remembering directions or making simple decisions.  (T at 87).

Dr. Brand described Plaintiff's attention and concentration as "[m]ildly impaired due to emotional stress secondary to depression."  (T at 150).  The August 2005 State Agency

RFC assessment indicated that Plaintiff "often" had deficiencies in maintaining concentration, persistence, or pace. (T at 167). In particular, Plaintiff was found to be moderately limited with respect to his ability to maintain attention and concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T at 153-54).

Plaintiff was found to have no limitations in terms of his ability to carry out very short/simple instructions and detailed instructions, perform activities within a schedule, maintain regular attendance, and being punctual, sustain an ordinary routine without special supervision, make simple work related-decisions, and work in coordination with or in proximity to others without being distracted. (T at 153). Dr. Achar's mental status examinations consistently reported Plaintiff's alertness, orientation, and concentration as "within normal limits." (T at 92, 94, 96, 98, 100, 102, 104, 118, 120, 122, 124, 126, 128, 130, 132, 134, 136).

In light of the foregoing, the Court has little difficulty concluding that substantial evidence supports the ALJ's determination that Plaintiff's limitations with respect to maintaining concentration, persistence, or pace are moderate. It is also noted that the ALJ accounted for these limitations when determining that Plaintiff could not perform his past relevant work as an electrician on the grounds that it was too "mentally demanding."

There are no medically documented episodes of decompensation, so that factor is not at issue. Accordingly, the Court finds that the ALJ applied the appropriate legal standard and substantial evidence supports the ALJ's RFC determination regarding the impact of Plaintiff's mental impairments on his ability to perform basic work activities.

14

### c.      Consideration of Treating Medical Provider's Opinions

The Commissioner is required to give controlling weight to a "treating source's opinion on the issue(s) of the nature and severity of [claimant's] impairment(s)" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(d)(2); see also Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir.1999).

Dr. Achar, Plaintiff's treating psychiatrist, provided a letter dated December 23, 2005, in which he opined that Plaintiff "seems unable to work on a full-time basis." (T at 171).  In addition, Dr. Achar completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental) form in December of 2006.  Dr. Achar opined that Plaintiff had marked limitations with respect to his ability to carry out detailed instructions and make judgments on simple work-related decisions. (T at 209).  Dr. Achar noted that Plaintiff was stable on medication when not working, but that work exacerbated his anxiety and depression. (T at 209).  The psychiatrist further concluded that Plaintiff had a marked limitation in terms of his ability to respond appropriately to work pressures in a usual work setting and respond appropriately to changes in a routine work setting. (T at 210).  Plaintiff contends that Dr. Achar's assessment was entitled to controlling weight.

The ALJ decided not to give controlling weight to Dr. Achar's opinion due to the fact that it was not supported and, indeed, somewhat contradicted by the clinical notes.  This Court finds no reversible error as to the ALJ's conclusion in this regard.

As noted above, Dr. Achar's actual clinical notes consistently described Plaintiff's mental status as within normal limits.   (T at 92, 94, 96, 98, 100, 102, 104, 118, 120, 122, 124, 126, 128, 130, 132, 134, 136).  Plaintiff was noted to be making progress and showing

15

improvement with regard to his depressive symptoms, even performing a few "odd jobs" in or around January 2006. (T at 183, 192, 194, 196). Indeed, Dr. Achar's Medical Source Statement appears to be a recitation of Plaintiff's subjective complaints, rather than the psychiatrist's clinical assessment of Plaintiff's limitations. For example, when asked to provide support for his assessment, Dr. Achar did not point to any clinical tests or treatment notes, but simply notes that Plaintiff "*feels* that he is not able to work at all" and "*[f]eels* overwhelmed by work situations." (T at 210)(emphasis added). Dr. Achar appears to have made no attempt to reconcile his disability assessment with the clinical notes indicating treatment progress and mental status examinations within normal limits.

Further support for the ALJ's decision not to afford controlling weight to Dr. Achar's assessment is found in the report prepared by Dr. Brady, the consultative examiner. As noted above, Dr. Brady opined that Plaintiff's attention, concentration, and memory skills were only "[m]ildly impaired" and that he demonstrated "good" insight and judgment. (T at 150). In addition, the State Agency review professionals noted that there was "some support" for Plaintiff's allegations, but found that he was "able to understand and remember simple and some complex instructions, sustain attention and concentration for simple and some complex tasks, relate adequately with others, and adapt to simple changes." (T at 156).

It is well-settled that an ALJ is entitled to rely upon the opinions of State agency medical and psychological consultants since they are deemed to be qualified experts in the field of social security disability. See 20 C.F.R. §§ 404.1512(b)(6), 404.1513(c), 404.1527(f)(2), 416.912(b)(6), 416.913(c), 416.927(f) (2). Such reliance is particularly appropriate where, as here, the opinion of the State agency psychologist is supported by

the weight of the record evidence. See Diaz v. Shalala, 59 F.3d 307, 31 n. 5 (2d Cir.1995); Provost-Harvey v. Comm'r of Soc. Sec., No. 06-CV-1128, 2008 WL 697366, at *6 (N.D.N.Y. Mar. 13, 2008) ("The evaluations of non-examining State agency medical and psychological consultants may constitute substantial evidence.").

Upon consideration of the foregoing, the Court finds no reversible error in the manner in which the ALJ weighed the opinion of Plaintiff's treating psychiatrist.

### d.   Evaluation of Plaintiff's Credibility

Subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

To this end, the ALJ must follow a two-step process to evaluate the claimant's credibility, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....
> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the claimant's contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a credibility determination:

1.   [Plaintiff's] daily activities;
2.   The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;
3.   Precipitating and aggravating factors;

4.     The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;

5.     Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;

6.     Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;

7.     Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds Plaintiff's contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In this case, Plaintiff testified at the hearing before the ALJ.  He explained that he has his "good days" and his "bad days."  On his bad days, Plaintiff has difficulty getting out of bed to do anything.  Even on good days, Plaintiff testified that he "lose[s]" his thought. (T at 242).  He explained that he has difficulty concentrating and sleeping (T at 244) and does not drive (T at 245).  Plaintiff testified that he avoids going out alone because he experiences "attacks" when in the grocery store or pharmacy. (T at 245).

The ALJ concluded that while Plaintiff's "medically determinable impairments reasonably could be expected to produce some of the alleged symptoms and limitations," his "statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely supported by the record." (T at 17).  The Court finds that the ALJ's assessment in this regard was supported by substantial evidence.  Again, as discussed above, the clinical notes consistently demonstrated mental status examinations within normal limits and indicated that Plaintiff was making progress while on medication.

18

Plaintiff's testimony regarding his daily activities and the indication that he had been performing "odd jobs" are also inconsistent with his claims of disabling depression. Further, the ALJ's assessment regarding the nature and extent of Plaintiff's limitations was supported by Dr. Brady's consultative exam and the review undertaken by the State Agency professionals.

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs, 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

The Court finds that the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984). The ALJ's decision should therefore be upheld.

### e.    Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part

process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling." Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of a claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In this case, the ALJ concluded that Plaintiff's ability to perform work at all exertional levels had been compromised by non-exertional mental impairments. (T at 19). However, the ALJ found that "these limitations have little or no effect on the occupational base of unskilled work at all exertional levels." (T at 19). Accordingly, the ALJ determined that given Plaintiff's age, education, past relevant work experience, and RFC, a finding of "not disabled" was warranted within the framework of § 204.000 of the Grids.

Plaintiff argues that it was inappropriate for the ALJ to rely upon the Grids due to the fact that his work capacity is significant diminished by non-exertional impairments and that a vocational expert should accordingly have been consulted to determine whether jobs exist in the national economy that Plaintiff can perform.

The Court finds Plaintiff's argument unavailing. The Second Circuit has held that "the mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." Bapp, 802 F.2d at 603. Rather, exclusive reliance on the Grids will only be deemed inappropriate where the non-exertional impairments "*significantly* limit the range of work permitted by his exertional limitations." Id. at 605-06 (emphasis added).

"A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a

21

claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" Id. at 606.

Here, the ALJ found that Plaintiff's non-exertional impairments had "little or no effect" on his occupational base of unskilled work at all exertional levels. (T at 19).  For the reasons discussed above, this conclusion was supported by substantial evidence.  As such, the ALJ did not err by relying upon the Grids and electing not to consult a vocational expert.  See, e.g., McConnell v. Astrue, No. 03-CV-0521, 2008 WL 833968, at *6-*7 (N.D.N.Y. Mar. 27, 2008); Roman v. Apfel, 24 F. Supp.2d 263, 275 (D.Conn. 1998).

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating sources, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   August 3, 2009

Syracuse, New York

## V. ORDERS

Pursuant to 28 USC §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C.

23

§636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY

Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to

consider arguments, case law and/or evidentiary material *which could have been, but were*

*not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc.

v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

August 3, 2009

Victor E. Bianchini
United States Magistrate Judge

24